SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Telephone: (212) 907-9700
Fax: (212) 907-9800
John G. McCarthy
jmccarthy@sgrlaw.com
*Attorneys for Plaintiff*
*Adecco, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | | |
|---|---|---|
| ADECCO, INC., | : | |
| Plaintiff, | : | 16 Civ. _____ |
| - against - | : | |
| GORES TECHNOLOGY SERVICES | : | **COMPLAINT** |
| HOLDINGS, LLC, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff Adecco, Inc. ("Adecco"), by its attorneys, Smith, Gambrell & Russell, LLP, as

and for its complaint against Defendant Gores Technology Services Holdings, LLC ("Gores"),

respectfully avers:

**The Parties**

1.      Plaintiff Adecco is a Delaware corporation authorized to conduct business under

the laws of the State of New York.

2.      Defendant Gores is a Delaware limited liability company with its principal place

of business at 6260 Lookout Road, Boulder, Colorado.

**Jurisdiction and Venue**

3.      On June 30, 2012, an Acquisition Agreement was entered into by and between

Adecco and its affiliate Modis Canada Inc. ("Modis Canada") on the one hand, and Gores and

9265-2585 Quebec Inc.  ("Quebec") on the other, whereby Adecco sold two operating

subsidiaries to Gores, and Modis Canada sold a portion of its Canadian business to Quebec.

4.      This dispute involves payment of a promissory note given to Adecco by Gores as

part of this sale.

5.      Section 11.4 of the Acquisition Agreement provides in pertinent part:

> Each party hereto hereby irrevocably and unconditionally submits, for
> itself and its property, to the exclusive jurisdiction of the United States
> District Court for the Southern District of New York, and any appellate
> court from any thereof, in any suit, action, proceeding, claim or
> counterclaim brought by or on behalf of any party related to or arising out
> of this Agreement (each, a "**Proceeding**"), and each party hereto hereby
> irrevocably and unconditionally agrees that all claims in respect of any
> such Proceeding may be heard and determined in such court. Each party
> hereto hereby irrevocably and unconditionally waives, to the fullest extent
> permitted by applicable law, (a) any objection that it may now or hereafter
> have to the laying of venue, and (b) any defense of forum non-conveniens.
> The parties waive personal service of any and all process on each of them
> and consent that all such service of process shall be made in the manner,
> to the party and at the address set forth in Section 11.1, and service so
> made shall be complete as stated in such section.

6.      Another civil action arising out the Acquisition Agreement is currently pending

before this Court under docket number 13 Civ. 05291 (AT) (JLC).

7.      Adecco has its principal place of business in Jacksonville, Duval County, Florida.

8.      Upon information and belief, Gores is not a citizen of Delaware or Florida.

9.      The amount in controversy in this action exceeds $75,000, exclusive of interest

and costs.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(a).

11.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) & (c)(2).

**Background**

12.     Gores represented itself to Adecco to be a $4 billion private equity firm focused on acquiring controlling interests in mature businesses, purportedly with a "proven track record" of "moving rapidly and providing closing certainty" with respect to purchasing corporate divisions or stand-alone companies from a corporate parent such as Adecco.

13.     Representatives of Gores inquired of Adecco about the possibility of exploring the purchase of one or more businesses.  Preliminary discussions thereafter ensued with regard to Gores' acquisition of Glotel, Inc. ("Glotel") and Idea Integration Corp. ("Idea Integration"), two wholly-owned subsidiaries of Adecco.

14.     On or about March 6, 2012, Gores Group, LLC, an affiliate of Gores, confirmed its interest in formally pursuing a purchase of Glotel and Idea Integration, and delivered to representatives of Adecco a letter of intent.

The Acquisition Agreement

15.     On June 30, 2012, an Acquisition Agreement was entered into by and between Adecco and Gores whereby Adecco sold Glotel and Idea Integration ("Acquired Businesses") to Gores in the form of a share purchase.

16.     Concurrent with the Acquisition Agreement, Adecco agreed to continue providing certain transition services to the Acquired Businesses for a period following the closing in consideration of receiving certain fees and expense reimbursements, pursuant to the Transition Services Agreement by and between Adecco, Gores, Idea Integration and Glotel (the "TSA").

17.     The Acquisition Agreement called for a simultaneous signing and closing, and Section 1.2 of the Acquisition Agreement provided that the ultimate Purchase Price of the

Acquired Businesses would be equal to an Estimated Purchase Price on the date of closing ($20,707,164.30), plus or minus certain specified adjustments.

18.     Section 1.2 of the Acquisition Agreement also provided that at the closing, the Gores entities would deliver an unsecured promissory note in the principal amount of two million dollars ($2,000,000) (the "Promissory Note") and deliver a secured promissory note in the principal amount equal to the remainder of the Estimated Purchase Price (including adjustment) less the two million dollars ($2,000,000) represented by the Promissory Note (the "Closing Payment").

The Closing

19.     Based on its preliminary calculations, Adecco informed Gores prior to the Closing that the Closing Payment should be adjusted downward by $1.77 million.

20.     The closing occurred on Saturday, June 30, 2012 (the "Closing").

21.     Due to the fact that the Closing occurred on a weekend, the Gores entities were to wire Adecco the agreed upon Closing Payment on Monday, July 2, 2012, in full satisfaction of the secured promissory note.

22.     On July 2, 2012, without the excuse or justification, the Gores entities paid $700,000 less than the lower Closing Payment required.

23.     It took Gores several days to pay the undisputed balance that it owed Adecco for the Closing Payment.

Dispute Concerning the TSA and Adjustment of Purchase Price

24.     Adecco performed the administrative functions set forth in the TSA and advanced millions of dollars on behalf of its former subsidiaries after the Closing.

25.     Gores repeatedly delayed reimbursement of Adecco despite its promise to promptly repay Adecco under the TSA.

26.     By May 3, 2013, Gores was long past due on millions of dollars owed to Adecco under the TSA.

27.     At the same time that Gores was breaching its promise to promptly reimburse Adecco under the TSA, the parties had yet to settle on the final purchase price adjustment.

28.     Gores presented its proposed final adjustment statement containing several bad faith assertions by Gores, such as entries for "allowance for doubtful accounts" of $6.7 million and an increase of accounts payable by $1.5 million, even though it lacked proof of any identifiable error in either category by Adecco.

29.     The Adecco entities sued the Gores entities in Florida; that case was removed to federal court and then transferred to this Court.

30.     Eventually an arbitration occurred to resolve issues pursuant to the purchase price and the TSA after a substantial payment by Gores and this Court's agreement to stay proceedings.

31.     In January 2015, the arbitrator determined that the net amount owed by Gores to Adecco was $1,094,741.26 for the purchase price adjustment ($1.2 million) and the TSA amounts (-$114,000).

32.     Gores did not pay all that it owed Adecco pursuant to the Arbitrator's determination as it offset more of the arbitrator's fee than it was allowed under the Acquisition Agreement and it neglected to pay pre-judgment interest on the monies that should have been paid to Adecco in 2013.

33.     Adecco's motion to compel Gores to pay the full amount due under the Arbitrator's determination is currently pending before this Court.

The Promissory Note

34.     At the Closing on Saturday, June 30, 2012, Gores delivered to Adecco an executed Promissory Note, as specified in Section 1.2 of the Acquisition Agreement, with a maturity date of June 30, 2016.

35.     The Promissory Note provides that Gores would pay Adecco the principal amount of two million dollars ($2,000,000) (the "Principal Amount"), together with all accrued and unpaid interest.

36.     Pursuant to Section 1.2 of the Promissory Note, all amounts outstanding would bear interest at a rate of five and one-quarter percent (5.25%) per annum, and any and all interest accruing was required to be paid annually to Adecco on June 30.

37.     Section 2.1 of the Promissory Note defines "event of default" as including "(a) the failure to pay any amount when due hereunder when such payment is due."

38.     The first interest payment on the Principal Amount was due and payable on June 30, 2013.

39.     Gores did not pay the $105,000 interest payment that was due on June 30, 2013.

40.     As a result, an Event of Default occurred.

41.     Section 2.2 of the Promissory Note provides in part:  "[a]fter the occurrence of an Event of Default, interest shall accrue on all amounts due under this Note at an annual rate equal to twelve percent (12%), calculated for the actual days elapsed on the basis of a 365/366-day year, as applicable."

42.    Section 2.2 further provides:  "[i]f an Event of Default occurs, Maker will pay to Holder such amounts as shall be sufficient to cover the costs and expenses of collection, including reasonable attorneys' fees, expenses and disbursements."

43.    Finally, Section 2.2 further clarifies that Gores "expressly waive[d] presentment demand, notice of nonpayment, protest, notice of protest, and notice of dishonor and any other notices in connection with any default of or in the enforcement of payment of all amounts due under [the Promissory] Note."

44.    In a letter dated August 4, 2016, Adecco, by and through its counsel, made a written demand to Gores requesting payment, pursuant to the Promissory Note, of the Principal Amount and accrued and unpaid interest thereon.

45.    To this day, Gores has not paid Adecco any interest that accrued on the Principal Amount.

46.    To this day, Gores has not paid Adecco any part of the Principal Amount, interest or default interest due under the terms of the Promissory Note.

47.    By reason of the foregoing, Gores has breached the terms of the Promissory Note, and Adecco has been, and continues to be, damaged.

## COUNT I
### (Failure to Pay Promissory Note)

48.    Adecco re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 47 above as though set forth fully herein.

49.    This is an action to recover amounts due pursuant to a promissory note which have not been paid.

50.    Gores failed to make the first interest payment of $105,000 when it was payable on June 30, 2013.

51.     Pursuant to the terms of the Promissory Note, Gores waived its rights to presentment, demand, notice of nonpayment, protest, notice of protest, and notice of dishonor, and any other notices in connection with any default of or in the enforcement of payment of all amounts due under the Promissory Note.

52.     Gores also failed to pay the $2,000,000 principal on July 1, 2013 when it became payable as a result of the occurrence of an Event of Default.

53.     Through September 21, 2016, default interest totaling $814,548.49 has accrued and it continues to accrue at a rate of $692.05 per day.

54.     Pursuant to the Promissory Note, Gores is obligated to pay Adecco's attorneys' fees and costs for services rendered in connection with collection under the Promissory Note.

WHEREFORE, Plaintiff Adecco demands judgment against Gores for damages of $2,105,000, with default interest of twelve percent per annum from July 1, 2013, its expenses in connection with collection (including attorney's fees), costs, and such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        September 22, 2016

SMITH, GAMBRELL & RUSSELL, LLP

By: _____
    John G. McCarthy

1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel: (212) 907-9700
Fax: (212) 907-9800
jmccarthy@sgrlaw.com

-and-

Steven E. Brust
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Tel: (904) 598-6100
Fax: (904) 598-6300
sebrust@sgrlaw.com

*Attorneys for Plaintiff*
*Adecco, Inc.*

SGR/14494230.2